**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **ARCHIE COOK, JR., Individually and** | ) | |
| **On Behalf of the Wrongful Death Beneficiaries** | ) | |
| **Of SHIRLEY I. COOK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:12-CV-00641** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **SUN HEALTHCARE GROUP, INC;** | ) | **JURY DEMANDED** |
| **SUNBRIDGE HEALTHCARE, LLC;** | ) | |
| **SUNBRIDGE OF HARRIMAN, LLC, d/b/a** | ) | |
| **RENIASSANCE TERRACE CARE and** | ) | |
| **REHABILIATION CENTER; and** | ) | |
| **MELISSA ANN FRANKLIN, Individually** | ) | |
| | ) | |
| **Defendants.** | | |

### FIRST AMENDED COMPLAINT

Plaintiff, Archie Cook, Jr., Individually and on behalf of the Wrongful Death Beneficiaries of Shirley I. Cook, pursuant to Rule 15(a)(1)(B) and 15(c)(1)(B) of the *Federal Rules of Civil Procedure* files his First Amended Complaint against Defendants, and for his cause of action states as follows:

### I. INTRODUCTION & DEFINITIONS

1.     All allegations in this First Amended Complaint are based upon information and belief except for those allegations that pertain to the Plaintiff, the persons, and Plaintiff's counsel.   Plaintiff's information and belief are based upon, *inter alia,* the investigation conducted to date by Plaintiff and his counsel.  Each allegation in this First Amended Complaint has either evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

2. The acts and omissions of the Corporate Defendants and Administrator Defendant as further defined and set out below are violations of the Tennessee Nursing Home Resident's Rights Act (Tenn. Code Ann. 68-11-101, *et. seq.)* and its implementing regulations (Nursing Home Rules and Regulations 1200-8-6, *et. seq.),* as well as the Tennessee Adult Protection Act (Tenn. Code An. 71-6-101, *et. seq.).*

3. Plaintiff contends that the violation of the statutes and regulations set out in the preceding paragraph gives rise to separate causes of action against the Corporate Defendants and the Administrator Defendant. Moreover, the Corporate Defendants' and Administrator Defendant's violations of such statutes and regulations are evidence of ordinary negligence.

4. Whenever the term "Defendants" is used in this action, such term refers to and includes all named Defendants in this lawsuit.

5. Whenever the term "Corporate Defendants" is used in this action, such term refers to and includes all Defendants, other than Melissa Ann Franklin, even if their business entity form is not a corporation, but may also include the business entity form of a partnership, limited partnership, limited liability company or otherwise.

6. Whenever the terms "the facility" and/or "the nursing home" are used in this action, such terms refer to and mean Sunbridge of Harriman, LLC d/b/a Renaissance Terrace Care and Rehabilitation Center (hereinafter "Renaissance Terrace") located in Roane County, Tennessee at 257 Patton Lane, Harriman, Tennessee 37748.

7. Whenever the terms "Administrator" and/or "Administrator Defendant" are used in this action, such terms refer to and mean Melissa Ann Franklin.

8. Whenever it is alleged in this action that the Corporate Defendants did any act or thing, it means that the officers, agents, or employees of the designated corporation and/or business entity respectively performed, participated in, or failed to perform such acts or things while in the course and scope of their employment or agency relationships with the Corporate Defendants.

## II. PLAINTIFF

9.     At all times relevant to this cause of action, Archie Cook, Jr., was an adult resident citizen of Roane County, Tennessee.

10.     Shirley I. Cook was a resident of Renaissance Terrace, a facility owned, operated and/or managed by the Corporate Defendants, from February 8, 2009 through December 20, 2011, when she died.

11.     At all times during her residency, Shirley I. Cook was unable to attend to her own affairs, disabled, and incompetent within the meaning of Tenn. Code Ann. 28-1-106. Accordingly, the foregoing savings statute has tolled the limitations period for Shirley I. Cook's claims against these Defendants.

12.     Archie Cook, Jr. brings this action to recover damages for Ms. Cook's physical pain and suffering; mental anguish; disfigurement; loss of dignity and respect, violation of her rights under the Tennessee Adult Protection Act; violation of her rights under the Tennessee Nursing Home Resident's Rights Act; reimbursement of her medical expenses; as well as any other compensation and/or relief, including but not limited to, attorneys' fees to which Plaintiff is entitled.  Archie Cook, Jr. also brings this action on behalf of Shirley I. Cook's wrongful death beneficiaries to recover the full value of the life of their mother, Shirley I. Cook, and for their individual losses of consortium.

## III. DEFENDANTS

13.     Defendant, Sun Healthcare Group, Inc. is a foreign corporation that at times material to this lawsuit engaged in business in Tennessee. The causes of action made the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, and/or control of Renaissance Terrace. Sun Healthcare Group, Inc. may be served with process through its registered agent, CSC of Lea County, Inc., 1819 N. Turner St., Suite G, Hobbs, New Mexico 88240.

14.     Defendant, Sunbridge Healthcare, LLC is a foreign limited liability company that at times material to this lawsuit was engaged in business in Tennessee.  The causes of action made the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, and/or control of Renaissance

Terrace. Sunbridge Healthcare, LLC may be served with process through its registered agent, CSC of Lea County, Inc., 1819 N. Turner St., Suite G, Hobbs, New Mexico 88240.

15.     Defendant, Sunbridge of Harriman, LLC d/b/a Sunbridge Terrace Care & Rehabilitation Center is a domestic limited liability company that at times material to this lawsuit was engaged in business in Tennessee and was the "licensee" authorized to operate the facility under the name of Sun Healthcare, Group, Inc. in Harriman, Roane County, Tennessee. The causes of action made the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, and/or control of Renaissance Terrace.  Sunbridge of Harriman, LLC d/b/a Renaissance Terrace Care and Rehabilitation Center may be served with process through its registered agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37748.

16.     Upon information and belief, Defendant, Melissa Ann Franklin, was the licensed administrator of the nursing home during a material portion of Shirley Cook's residency.  Ms. Franklin was employed as the Administrator of Renaissance Terrace between June 7, 2011 and January 16, 2012.  Upon information and belief, Ms. Franklin is a Tennessee resident and may be served with process at her place of employment, Ardmore on Main Care and Rehabilitation Center, 25385 Main Street, Ardmore, Tennessee 38449.

17.     The Defendants' contacts with the State of Tennessee form the basis of personal jurisdiction in this case.  The injuries forming the basis of this lawsuit were a product of the corporate and financial policies designed, formulated, and implemented by Defendants.  Upon information and belief, this Court lacks subject matter jurisdiction as both the Plaintiff and the Administrator Defendant are Tennessee residents.  Accordingly, complete diversity among the parties does not exist.

18.     Venue for this action properly lies in Roane County, Tennessee because the actions and omissions forming the basis of this suit arose in Roane County.

19.     With respect to the Corporate Defendants, Plaintiff has complied with the notice provisions of T.C.A. 29-26-121(a) as demonstrated by the Affidavit of Compliance and Certificate of Good Faith that were filed with his original Complaint in the Circuit Court of Roane County, Tennessee and filed with this Court via the Corporate Defendants' Notice of Removal.  Notice was provided to the Corporate Defendants

within one (1) year of the alleged malpractice or the discovery of the alleged malpractice. Notice was sent to the Corporate Defendants via certified mail, return receipt requested, with a certificate of mailing on June 1, 2012. Plaintiff's Complaint against the Corporate Defendants was filed more than sixty (60) days after service of pre-suit notice and within one year and one hundred twenty (120) days of the alleged malpractice or the date of discovery of the alleged malpractice. Plaintiff's Complaint and First Amended Complaint are timely filed.

## IV.  NATURE OF CORPORATE DEFENDANTS' LIABILITY

20.     **Alter Ego:** Defendants, Sunbridge Healthcare, LLC and Sunbridge of Harriman, LLC d/b/a Renaissance Terrace Care and Rehabilitation Center were a mere conduit through which Defendant, Sun Healthcare Group, Inc., did business. The management and the operations of Sunbridge Healthcare, LLC and Sunbridge of Harriman, LLC d/b/a Renaissance Terrace Care and Rehabilitation Center were so assimilated within the parent, Sun Healthcare Group, Inc., to the extent that the aforementioned subsidiaries were simply a name through which the parent, Sun Healthcare Group, Inc. conducted its business. Moreover, Sun Healthcare Group, Inc., represented to the public that the aforementioned subsidiaries were part of one single economic enterprise known as Sun Healthcare Group, Inc. Said parent corporation completely dominated and controlled the business affairs of its subsidiaries insomuch as the subsidiaries were mere tools of Sun Healthcare Group, Inc.

21.     **Agency:** In the alternative, at all times material to this suit, Defendants, Sunbridge Healthcare, LLC and Sunbridge of Harriman, LLC d/b/a Renaissance Terrace Care and Rehabilitation Center acted as agents of Sun Healthcare Group, Inc. As such, Defendant, Sun Healthcare Group, Inc. ratified or authorized the acts or omissions of Defendants, Sunbridge Healthcare, LLC and Sunbridge of Harriman, LLC d/b/a Renaissance Terrace Care and Rehabilitation Center.

22.     **Joint Enterprise:** In the alternative, to the extent that the Defendants are found to be separate corporate entities and would not be liable for the acts of each other under theories that allow looking beyond the corporate fiction, each Defendant remains liable for the acts of the others because the Defendants operated their business as a joint

enterprise. Defendants engaged in a joint venture and acted in concert in the operation, management, and maintenance of Renaissance Terrace. These entities entered into an agreement with the common purpose of operating, managing, and maintaining Renaissance Terrace. These entities had an equal right to control their venture as a whole, as well as to control the operation and management of the subject facility.

## V. FACTS

23. Upon information and belief, Shirley I. Cook was admitted as a resident to Renaissance Terrace on, February 8, 2009 where she remained until her death on December 20, 2011.

24. At the time of Ms. Cook's admission to Renaissance Terrace, Defendants represented that they were competent to provide Ms. Cook with the necessary custodial services, medical treatment and care she needed.

25. On or about November 20, 2011, Ms. Cook was struck by a food cart operated by one of the Corporate Defendants' custodial caregivers (i.e. a certified nursing assistant). The impact caused Ms. Cook to fall to the ground.

26. On or about November 20, 2011, Ms. Cook was transferred to Roane Medical Center where she was diagnosed with a basilar neck fracture to her left hip and an additional fracture through the tip of her greater trochanter. Following surgical repair of her fractures, Ms. Cook remained at Roane Medical Center until November 23, 2011 when she was discharged back to the care of Renaissance Terrace.

27. Ms. Cook remained at Renaissance Terrace until her death on December 20, 2011.

28. By reason of the Defendants' ongoing neglect, Ms. Cook was allowed to suffer physical and emotional injuries, which included, but were not limited to, a fractured hip; pressure sores; weight loss; permanent disfigurement; and death.

29. As a result of these injuries, Ms. Cook required medical attention and her overall health deteriorated causing unnecessary physical suffering, mental anguish and death.

30. The injuries described in this First Amended Complaint are a direct and proximate result of the acts or omissions set forth herein, singularly or in combination.

<u>**COUNT I**</u>

**INJURIES CAUSED BY CORPORATE DEFENDANTS' AND
ADMINISTRATOR DEFENDANT'S ORDINARY NEGLIGENCE**

31.     This is a claim for ordinary negligence and does **not involve** a decision, act, or omission requiring knowledge of medical science or specialized training or skill. The acts or omissions complained of herein may be assessed by the trier of fact on the basis of common, everyday experiences.  The acts or omissions complained of herein are intended to involve solely custodial neglect, and not medical malpractice. *See Estate of French v. Stratford House,* 2011 Tenn. LEXIS 9 (January 26, 2011).

32.     Plaintiff re-alleges and incorporates the allegations in paragraphs 1-31 as if fully set forth herein.

33.     Corporate Defendants and the Administrator Defendant owed a duty to their residents, including Shirley Cook, to provide custodial care, treatment and services within accepted standards of care of nursing homes.

34.     Corporate Defendants and the Administrator Defendant owed a duty to their residents, including Shirley Cook, to hire, train, and supervise employees to deliver custodial care and services to residents in a safe and beneficial manner.

35.     Corporate Defendants and the Administrator Defendant breached the duties owed to their residents, including Shirley Cook, and were negligent in their non-medical, ordinary care and treatment of Shirley Cook by and through their acts and omissions, which were within the understanding of an ordinary lay person and did not require medical training, assessment or diagnosis, including but not limited to, the following:

A.     Failure to provide sufficient numbers of certified nursing assistants to ensure the nursing home met the custodial, non-medical needs of Ms. Cook, including but not limited to, food, water, baths, showers, grooming, incontinent care, personal attention and care to her skin, feet, nails, and oral hygiene;

B.     Failure to administer the facility in such a manner as to provide the facility with adequate resources to ensure sufficient non-medical (C.N.A.) staffing and supplies, such as diapers, linens, and towels were available to care for all residents, including Ms. Cook;

C.     Failure to provide sufficient numbers of non-licensed staff to follow Ms. Cook's care plans and to prevent Ms. Cook's needs from being ignored;

D.     Failure to provide adequate supervision and oversight to non-licensed personnel to ensure that Ms. Cook received adequate and proper custodial care;

E.     Failure to provide adequate overall custodial (non-medical) care;

F.     Failure to provide adequate and appropriately trained non-licensed staff and supervision to such personnel as to ensure that Ms. Cook received adequate and proper custodial care, adequate hydration, and warm and palatable meals;

G.     Failure to adopt adequate guidelines, policies and procedures for documenting, maintaining files, investigating and responding to concerns regarding the custodial, non-medical care of residents;

H.     Failure by the members of the governing body of the nursing home to discharge their legal and lawful obligation by:

(1)  ensuring that the rules and regulations designed to protect the health and safety of residents, such as Shirley Cook, as promulgated by the Tennessee Legislature and corresponding regulations implemented expressly pursuant thereto by the Tennessee Department of Health and its agents, including the Division of Health Care Facilities, were consistently complied with on an ongoing basis;

(2)  ensuring that the resident care policies for the facility were consistently in compliance on an ongoing basis; and

(3)  responsibly ensuring that appropriate corrective measures were implemented to correct problems concerning inadequate resident care (non-medical).

I.     Failure of non-medical personnel to maintain records in accordance with accepted standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to Ms. Cook;

J.     Failure to provide basic and necessary non-medical care and supervision during Shirley Cook's residency;

K.     Failure to protect Ms. Cook from abuse and neglect during her residency;

L.     Failure to treat Ms. Cook with kindness and respect;

M.     Failure of high managerial agents and corporate officers to adequately hire, train, supervise and retain the administrator and other staff so as to assure that Ms.

Cook received care in accordance with Defendants' policies and procedures;

N. Making false, misleading, and deceptive representations to the quality of care, treatment and services provided by the facility to their residents, including Shirley Cook; and

O. Failure to provide adequate training, supervision and oversight to non-licensed personnel in the safe operation of non-medical equipment, including but not limited to, food carts.

36. Each of the acts or omissions set forth within this section operating singularly or in combination was a direct and proximate cause of the injuries, and damages described in this First Amended Complaint.

37. Shirley Cook's injuries were the result of Corporate Defendants' and the Administrator Defendant's administrative decisions, including short-staffing Renaissance Terrace, which affected all residents of the nursing home, including Ms. Cook. Defendants' administrative decisions were made for the benefit of all residents at the facility and without Shirley Cook's specific care or treatment in mind.

38. Corporate Defendants' and the Administrator Defendant's administrative decisions led to inadequate conditions at Renaissance Terrace that caused the Tennessee Department of Health and Human Services to cite the nursing home for numerous deficiencies. Corporate Defendants' and the Administrator Defendant's decisions to provide Renaissance Terrace with insufficient resources resulted in the facility being understaffed and undersupplied, which led to Shirley Cook's injuries.

39. Additionally, at all times during Shirley Cook's residency at Renaissance Terrace, she was a "resident" pursuant to T.C.A. 68-11-901, *et. seq*., "The Tennessee Nursing Home Residents Rights Act" ("TNHRRA"), and the corresponding regulations implemented expressly pursuant thereto by the Tennessee Department of Health and its agents, including the Division of Health Care Facilities, namely the Nursing Home Rules and Regulations 1200-8-6, *et. seq*. Accordingly, Shirley Cook is a member of the class that TNHRRA is intended to protect.

40. As a resident, Ms. Cook had the right:

A. To receive assistance when needed in maintaining body hygiene;

B.      To have her family notified immediately about anything unusual involving her;

C.      To be free from willful abuse and neglect as those terms are defined by T.C.A. 71-6-102, and;

D.      To be treated with consideration, respect and full recognition of her full dignity.

41.     Shirley Cook was injured, as described herein, as a direct result of the acts or omissions of the Corporate Defendants and Administrator Defendant as set forth above, which constitutes a violation of TNHRRA, as well as 42 CFR 483.10, *et. seq*., and the Nursing Home Regulations of the Tennessee Department of Health, Rules of the Tennessee Department of Health Board for Licensing Healthcare Facilities, Chapter 1200-8-6, *et. seq*, and are evidence of negligence.  Violation of the foregoing federal and state regulations governing nursing homes also constitutes negligence *per se*.  The injuries Shirley Cook suffered were of the type that TNHRRA is designed to prevent.

42.     WHEREFORE, by reason of the allegations set forth within this section, Plaintiff seeks compensatory damages and punitive damages against the Corporate Defendants and Administrator Defendant in an amount to be determined by a jury, plus costs and any other relief to which Plaintiff is entitled to recover by law.


## COUNT II

### CORPORATE DEFENDANTS' AND ADMINISTRATOR DEFENDANT'S GROSS NEGLIGENCE, WILLFUL, WANTON, RECKLESS, MALICIOUS AND/OR INTENTIONAL CONDUCT

43.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-42 as if fully set forth herein.

44.     The longevity, scope, and severity of Corporate Defendants' and the Administrator Defendant's failures and actions and their consciously indifferent actions with regard to the welfare and safety of helpless residents, such as Shirley Cook, constitute gross negligence, willful, wanton, reckless, malicious and/or intentional misconduct as such terms are understood in law.

45.     Such conduct was undertaken by the Corporate Defendants and the Administrator Defendant in conscious disregard of the health and safety consequences to those residents / patients, such as Ms. Cook, entrusted to their care. Moreover, such conduct evidences such little regard for their duties of care, good faith, and fidelity owed to Shirley Cook as to raise a reasonable belief that the acts and omissions set forth above are the result of conscious indifference to Shirley Cook's rights and welfare.

46.     WHEREFORE, by reason thereof, Plaintiff also seeks punitive damages against the Corporate Defendants and the Administrator Defendant in an amount to be determined by the jury, plus costs and any other relief to which Plaintiff is entitled by law.


## COUNT III

### CORPORATE DEFENDANTS' AND ADMINISTRATOR DEFENDANT'S VIOLATION OF THE TENNESSEE ADULT PROTECTION ACT ("TAPA")

47.     This is a claim for violation of the Tennessee Adult Protection Act, codified at T.C.A. 71-6-101, *et. seq.*, which has arisen due to Corporate Defendants' and Administrator Defendant's ordinary negligence and does **not involve** a decision, act, or omission based on medical science or specialized training or skill. The acts or omissions complained of herein may be assessed by the trier of fact based on common, everyday experiences. **The acts or omissions complained of herein involve mere custodial neglect and not medical malpractice.** *See Estate of French v. Stratford House,* 2011 Tenn. LEXIS 9 (January 26, 2011).

48.     At all times during her residency at the nursing home, Shirley Cook was an "incapacitated person" as defined by the Tennessee Adult Protection Act, T.C.A. 71-6-101, *et. seq.*

49.     Corporate Defendants and the Administrator Defendant were "caretakers" for Ms. Cook, as defined by TAPA, as they assumed responsibility for the care of Ms. Cook pursuant to contract(s) or agreement(s).

50.     Accordingly, Ms. Cook was a member of the class that TAPA is intended to protect.

51. The following acts or omissions were committed by the Corporate Defendants and the Administrator Defendant, none of which require any medical training, assessment or diagnosis, and thus do not constitute medical malpractice, but which inflicted physical pain, injury, mental anguish, and/or constituted a deprivation of services that were necessary to maintain the health and welfare of Ms. Cook, thereby constituting "abuse and neglect" as defined by TAPA:

A. Corporate Defendants and the Administrator Defendant abused and neglected Shirley Cook as defined by TAPA during her residency;

B. Corporate Defendants and the Administrator Defendant failed to provide sufficient non-licensed personnel to provide basic custodial care (that is, care that does not require medical skill, training or expertise, and is within the understanding of an ordinary lay person):

C. Corporate Defendants and the Administrator Defendant deprived Shirley Cook of adequate sanitary, non-medical care;

D. Corporate Defendants and the Administrator Defendant created an unsafe and unsanitary environment for Ms. Cook;

E. Corporate Defendants and the Administrator Defendant inflicted physical pain, injury and mental anguish upon Ms. Cook; and

F. Corporate Defendants and the Administrator Defendant deprived Ms. Cook of the non-medical services necessary to maintain her health and welfare.

52. Accordingly, the injuries suffered by Ms. Cook are the type that TAPA is designed to prevent.

53. As a direct and proximate result of the aforementioned, non-medical acts and omissions of the Corporate Defendants and the Administrator Defendant, Shirley Cook suffered injuries, physical pain, mental suffering, disfigurement, and loss of enjoyment of life. As a further direct and proximate cause of the Corporate Defendants' and Administrator's conduct, Shirley Cook required medical attention, thereby incurring medical expenses. Violations of TAPA were a proximate cause of Shirley Cook's injuries.

54. Corporate Defendants' and the Administrator Defendant's acts constituted "abuse or neglect" as defined by TAPA, and caused damages to Ms. Cook as previously

described. The Corporate Defendants' and Administrator Defendant's acts entitle Plaintiff to recover against Defendants both compensatory and punitive damages in an amount to be determined by the jury, attorney's fees pursuant to TAPA, plus costs and any other relief to which Plaintiff is entitled by law.

55. Plaintiff seeks compensatory and punitive damages in an amount to be determined by a jury, plus costs, and any other relief to which Plaintiff is entitled to recover by law from the Corporate Defendants and the Administrator Defendant.


## COUNT IV

## IN THE *ALTERNATIVE*, CORPORATE DEFENDANTS' NEGLIGENCE UNDER THE TENNESSEE MEDICAL MALPRACTICE ACT, TENN. CODE ANN. 29-26-115, *ET. SEQ.*

56. To the extent Shirley Cook's injuries were caused by medical negligence (rather than ordinary negligence) involving a decision, act, or omission based on medical science or specialized training or skill, and which required medical training, assessment or diagnosis, Plaintiff brings a claim for medical malpractice against the Corporate Defendants.

57. Plaintiff hereby re-alleges and incorporates the allegations of Paragraphs 1-30, as if fully set forth herein.

58. Corporate Defendants owed a duty to residents, including Shirley Cook, to render care and services as a reasonably prudent and similarly situated healthcare provider would render, including, but not limited to, rendering care and services in a safe and beneficial manner.

59. Corporate Defendants owed a duty to residents, including Shirley Cook, to hire, train and supervise licensed employees so that such employees delivered medical care and services to residents in a safe and beneficial manner.

60. Corporate Defendants owed a duty to assist all residents, including Shirley Cook, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

61. Corporate Defendants failed to meet the professional standard of care as described below and violated their duty of care to Shirley Cook through mistreatment, abuse and neglect. The medical negligence of Corporate Defendants includes, but is not limited to, the following acts and omissions requiring medical skill, training or expertise:

A. Failure to conduct appropriate assessments to identify Shirley Cook's needs, including but not limited to: (i) Failure to properly assess Ms. Cook's risk for developing skin breakdown and/or pressure sores; (ii) Failure to properly assess Ms. Cook's risk for falling (iii) Failure to adequately monitor and assess Ms. Cook and recognize significant changes in her condition; and (iv) Failure to appropriately assess Ms. Cook's risk for untreated and unmanaged pain.

B. Failure to develop, maintain and implement an adequate care plan for Ms. Cook that addressed her needs.

C. Failure to develop, maintain and implement adequate nursing care plans, including necessary revisions, based on Ms. Cook's needs, including, but not limited to, prevention of pressure sores, prevention of falls, and prevention of unmanaged pain.

D. Failure to ensure that nursing personnel followed an adequate nursing care plan for Ms. Cook;

E. Failure to revise and update appropriate care plans to meet Ms. Cook's needs;

F. Failure to provide care, treatment, and medication to Ms. Cook in accordance with her physician's orders;

G. Failure to properly and timely notify Ms. Cook's attending physician of significant changes in her condition;

H. Failure to timely notify Ms. Cook's family of significant changes in her condition;

I. Failure to maintain medical records regarding Ms. Cook in accordance with accepted professional standards and practices that are complete, accurate, readily accessible, and systemically organized with respect to: (i) Ms. Cook's diagnosis; (ii) Ms. Cook's treatment; and (iii) the ongoing assessments and establishment of appropriate care plans of treatment for Ms. Cook;

J.   Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in Ms. Cook's care;

K.   Failure to provide timely medical interventions to Ms. Cook, including but not limited to, use of fall prevention devices;

L.   Failure to provide proper supervision, assessment and treatment to Ms. Cook so as to prevent pressure sores, falls, fractures, and pain;

M.   Failure to provide the types and numbers of staff, including nursing personnel, to meet Ms. Cook's needs;

N.   Failure to provide adequate training to the nursing staff thereby failing to equip them to meet Ms. Cook's needs;

O.   Failure to provide adequate supervision to the nursing staff to ensure that they met Ms. Cook's needs;

P.   Failure to take appropriate measures to prevent Ms. Cook from developing avoidable infections;

Q.   Failure to take appropriate measures to prevent Ms. Cook from developing avoidable skin breakdown and pressure sores;

R.   Failure to provide Ms. Cook with a safe environment;

S.   Failure to provide prompt reporting and documentation of accidents and significant changes in Ms. Cook's condition;

T.   Failure to protect Ms. Cook from physical, mental and psychological harm;

U.   Failure to instruct and train staff concerning Ms. Cook's need for supervision and assistance to keep her safe from skin breakdown, pressure sores, falls, fractures, and other injuries;

V.   Failure to timely diagnose and treat changes in Ms. Cook's condition, including but not limited to, skin breakdown, pressure sores, unmanaged pain, falls and fractures; and

W.   Failure to timely transfer Ms. Cook to an acute care hospital for assessment, monitoring and treatment of changes in her physical and mental condition.

62.     A reasonably prudent healthcare provider, operating under the same or similar conditions, would not have violated the professional standard listed above.  Each of the foregoing acts of the Corporate Defendants' professional negligence was a proximate cause of Ms. Cook's injuries. Ms. Cook's injuries were all foreseeable to the Corporate Defendants.

63.     Corporate Defendants' conduct in breaching the duties owed to Ms. Cook was negligent, grossly negligent, willful, wanton malicious, reckless and/or intentional.

64.     As a direct and proximate result of such negligent, grossly negligent, willful, wanton, reckless, malicious, and/or intentional conduct, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Corporate Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, disability and humiliation in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.


## COUNT V

### IN THE *ALTERNATIVE*, CORPORATE DEFENDANTS' NEGLIGENCE PURSUANT TO THE TENNESSEE HEALTH CARE LIABLITY ACT, TENN. CODE ANN. 29-26-101, *ET. SEQ.*

66.     To the extent that this Court determines that Shirley Cook's injuries occurred after October 1, 2011, and are subject to Tenn. Code. Ann. 29-26-101, *et. seq* as amended, Plaintiff brings a claim against the Corporate Defendants for violation of Tenn. Code Ann. 29-26-101, *et. seq*. as amended October 1, 2011.  Plaintiff contends, however, that Tenn. Code. Ann. 29-26-101, *et. seq*. is unconstitutional, as amended October 1, 2011, under the Constitutions of the State of Tennessee and the United States, and violates due process, the separation of powers doctrine, and the inherent authority of the courts to protect the integrity of the proceedings and the rights of the litigants.  The assertion of a cause of action under this statute should not be deemed a waiver of Plaintiff's right to challenge the constitutionality of the statute.

67.     Plaintiff re-alleges and incorporates all prior allegations in paragraphs 1-30, and 56-64 as if fully set forth herein.

68.     Corporate Defendants are "health care providers" within the meaning of Tenn. Code Ann. 29-26-102, and owed a duty to Shirley Cook to provide her healthcare services in a safe and beneficial manner.

69.     Corporate Defendants breached their duties owed to Shirley Cook as previously set forth herein, thereby causing Ms. Cook to be injured as set forth in the Complaint.

70.     Corporate Defendants' conduct in breaching the duties owed to Shirley Cook was negligent, grossly negligent, willful, wanton, malicious, reckless and/or intentional.

71.     As a direct and proximate result of such negligent, grossly negligent, willful, wanton, malicious, reckless and/or intentional conduct, Shirley Cook was injured, for which Plaintiffs assert a claim for judgment for all compensatory and punitive damages against the Corporate Defendants, including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, and humiliation in an amount to be determined by the jury, plus costs and all other relief to which Plaintiffs are entitled.

## COUNT VI

### SURVIVAL AND WRONGFUL DEATH CLAIM AGAINST CORPORATE DEFENDANTS AND ADMINISTRATOR DEFENDANT

72.     As a direct and proximate result of the acts or omissions of the Corporate Defendants and the  Administrator Defendant as set forth above, Shirley Cook suffered mental anguish, pain and suffering, and physical injuries which include, but are not limited to those described herein, including death.

73.     As a further direct and proximate result of the Corporate Defendants' and the Administrator Defendant's conduct, Shirley Cook required medical attention and hospitalization, and incurred liability to pay reasonable and necessary charges for such.

74.     As a direct, natural and proximate result of the acts or omissions of the Corporate Defendants and the Administrator Defendant as set forth above, Shirley Cook died on December 20, 2011, thereby incurring reasonable and necessary charges for funeral and related expenses.

75.     As a direct and proximate result of the previously alleged conduct, all of which was negligent, grossly negligent, will and wanton, outrageous, reckless, malicious, and/or intentional, Shirley Cook endured pain, suffering and death.  Indeed, Shirley Cook suffered personal injury including excruciating pain and suffering, mental anguish, emotional distress, and humiliation, which includes, but is not limited to, that described herein.

76.  Additionally, as a direct and proximate result of the previously alleged conduct, all of which was negligent, grossly negligent, will and wanton, outrageous, reckless, malicious, and/or intentional, Shirley Cook's family has suffered more than the normal grief of losing the life of their loved one, and accordingly seeks damages for loss of consortium, attention, guidance, care, protection, companionship, affection and love. Accordingly, Plaintiff is entitled to recover against the Corporate Defendants and Administrator Defendant compensatory and punitive damages based on the foregoing.

77.  Plaintiff seeks compensatory and punitive damages against the Corporate Defendants and Administrator Defendant in an amount to be determined by the jury, plus costs and any other relief to which Plaintiff's are entitled by law.

## DAMAGES

78.     As a direct and proximate result of the acts and omissions of the Corporate Defendants and the Administrator Defendant as set out above, Shirley Cook suffered injuries, including but not limited to, those described herein.  As a result, Shirley Cook incurred significant medical expenses and suffered embarrassment, physical impairment, pain and suffering, mental anguish, and death.

79.     To the extent Defendants assert that Tenn. Code Ann. 29-39-101, *et. seq.* or the Court deems Tenn. Code Ann. 29-39-101, *et. seq.* applicable to the present case or controversy, Plaintiff affirmatively avers that these statutory provisions are unconstitutional.

80.     The Constitution of the State of Tennessee provides for:

   **(1)     Right to Trial by Jury.**

             [T] right of trial by jury shall remain inviolate . . . .

             Tennessee Constitution, Art. 1, Sec. 6.

(2)     **Open Courts.**

[A]ll courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Tenn. Constitution, Art. 1 Sec. 17.

(3)     **Separation of Powers.**

The powers of the government shall be divided into three distinct departments:  legislative, executive and judicial.  Tenn. Constitution, Art. 2, Sec. 2.

81.     The Constitution of the United States provides for:

(1)     **Right to Trial by Jury.**

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law. United States Constitution, Amendment VII.

(2)     **Due Process and Equal Protection.**

. . .No State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; . . . without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws . . . . United States Constitution, Amendment XIV.

82.     Plaintiff asserts that Tenn. Code Ann. 29-39-101, *et. seq*., violates the Constitutions of the State of Tennessee and the United States by affecting the right to trial by jury, open courts, separation of powers, equal protection, and due process.


**TRIAL BY JURY REQUEST**

83.     Plaintiff demands a trial by jury as to all issues so triable.


**PRAYER FOR RELIEF**

86.     WHEREFORE, Plaintiffs prays for judgment against the Corporate Defendants and the Administrator Defendant as follows:

A.     For damages to be determined by the jury, in an amount exceeding the minimum jurisdictional amount of this Court and adequate to compensate Plaintiff for all

the injuries and damages sustained in an amount not to exceed Two Million Dollars ($2,000,000.00);

      B.      For all general and special damages caused by Defendants' conduct;

      C.      For the costs of litigating this case;

      D.      For punitive damages sufficient to punish Defendants for their egregious conduct and to deter Defendants and others from repeating such conduct;

      E.      For attorneys' fees and costs pursuant to the Tennessee Adult Protection Act; and

      F.      For all other damages and other relief to which Plaintiff may be justly entitled.

Respectfully submitted,


/s/ Jacob C. Parker
TN BPR No. 023993

THE PARKER FIRM
P.O. Box 21941
Chattanooga, Tennessee 37424-0941
T: 423.240.5120
F: 866.473.9634

NAHON, SAHAROVICH & TROTZ, PLC
Mark N. Geller, TN BPR No. 022797
488 South Mendenhall
Memphis, Tennessee 38117
T: 901.462.3353

Case 3:12-cv-00641-TWP-CCS   Document 11   Filed 01/17/13   Page 21 of 22   PageID #: 168